CHIEF JUSTICE WILLIAMS
delivered the opinion op the court:
The city of Henderson, having subscribed for stock in' the Evansville, Henderson, and Nashville Railroad Company, under the act of incorporation, levied a tax to pay the interest on bonds issued to pay for it. The authority is “ to levy a tax upon tlie tax-payers of the city, taxable under the revenue laws of the State, a sum. sufficient to pay the interest and the costs of collecting the same."
Barret & Co. were largely purchasing leaf tobacco from the planters of Henderson and surrounding counties, and were stemming and shipping it to foreign markets'for sale. The city insists upon the right to tax this tobacco as merchandise, subject to taxation under the general revenue laws of the State.
The act of January 9, 1852 (2 Slant. Rev. Stat., 253-4), amending the revenue laws, directs the assessor in each county, after taking the list of all property required to be specifically listed, “ to require each person, on oath, to fix the amount he or she is worth from all other sources on the day to which said list relates, after taking out his or her indebtedness from said amount he or she is worth, exclusive of property in lands, slaves, or other property not within this Commonwealth, but subject to taxation by the laws of the country where situated; and the said assessors shall take from the said amount so assessed and listed the sum of one hundred dollars, and set down and list the balance for taxation : * * * Provided, That the *258 growing crop on land listed for taxation, articles manufactured in the family for family use, all the poultry raised for family use, and the provisions on hand-for family use, shall be exempt from taxation.”
.The value and amount of property is to be listed as of January 10th of each year, and the value from all other sources is to be given in as of that date, except as to merchants and grocers, who are to list their stocks as of April 10th, in each year.
Such crop, therefore, as may be growing on the land January 10, the articles manufactured in the family, the poultry raised, and the provisions on hand, so far as all these may be for family use, are exempted from taxation, and only so far. The ripened crop of the past season, so far as not needed for family consumption, is to enter into the value of the estate from other resources than the specifically taxed articles; so of all the other products of the farm, whether of cereals or meats.
As the Legislature has manifested an intention to tax the surplus products of the country under this designation, of from all other sources, it is hardly probable it was intended to tax it as merchandise as of April 10, in each year, as thereby a double taxation would be placed upon the same crop. Whether, therefore, dealers in tobacco and other products might not, in the absence of any contrary intent appearing, be deemed merchants within the meaning of section 15, chapter 83, Revised Statutes ; and if so, whether the adding labor to it, and thereby placing it in an altered or new condition, might not exempt it from the exclusion of said section as “ articles manufactured in families within this State,” is not important, especially as we regard the intent to tax it as of January ¿0, in each year, under the provisions of the subsequent enactment of January 9, 1852, as much more apparent; *259 and if there be any inconsistency, the latter act must prevail.
It was then erroneous to assess Barret’s tobacco as of any other date than that of January 10th; but he, like all other owners, should give in all the tobacco then owned, as part of his estate, from all other sources not specifically taxed.
This liability of the city did not occur until after April; hence, the council determined to make the assessment as of June, and perhaps this would produce as much equality as any other time; yet, as the whole manner of taxation, the persons and property to be taxed, are to be regulated by the State revenue laws, and no other day being designated in the special enactment, the dates fixed by the general revenue laws must govern even for the first year, and certainly so for the succeeding years; and, on a return of the cause, the assessment will be directed as of the different dates designated by the general revenue laws for the various assessments to be levied.
The city sought to assess John H. Barret on a large amount of funds in other cilies and countries under the equalization rule, but which the court below refused to allow.
It is insisted by him that the language of these special enactments does not authorize this; that “tax-payers of the city, taxable under the revenue laws of the Statef designate the persons but not the subject of taxation; but we think it manifest that the Legislature intended thereby to include the entire subject, embracing the persons, the property, and manner of the assessment, and to adopt in relation to all of these, the revenue rule of the State.
By said act of January 9, 1852, it is made the duty of each person, “on oath, to fix the amount he or she is worth from all sources, on the day to which said list re *260 lates, after taking out his indebtedness from said amount he or she is worth, exclusive of property in lands, slaves, or other property not within this Commonwealth, but subject to taxation by the laws of the country where situated
This statute has heretofore been under revision by this court, and has been held to embrace money, choses in action, deposits, &c., in other countries as subject to assessment, unless taxed by the country where situated.
The only limitation upon the taxing power is, that it shall be equal, when all who own money within or without the State are required to list it for taxation, unless, when in other States and countries, it is there taxed, equality is secured.
This act, therefore, we regard as both constitutional and applicable to this case; and in the absence of any evidence that Barret’s money is taxed where situated, it is liable to the assessment for railroad purposes just as it would be for State revenue.
The judgment refusing the assessment as to Barret’s funds in other countries was, therefore, erroneous.
Wherefore, the judgment against John H. Barret & Co., in favor of the city, and the judgment against the city of Henderson, in favor of John H. Barret, are both reversed, with directions for further proceedings consistent herewith.
As there were errors as to both parties, no judgment for costs will be allowed to either.