JUDGE LINDSAY
delivered the opinion of the court.
The sixth section of an amendment to the charter of the Elizabethtown & Paducah Railroad Company, approved February 24, 1868, provides “that whenever the city council of any city, or the board of trustees of any town, into or near to which it is proposed to construct said Elizabethtown & Paducah Railroad, or the general council of the city of .Louisville, shall be requested to do so, it shall be the duty of such city council or town trustees to submit to a vote of the qualified voters of such city or town, on a day to be designated by such council or trustees not later than thirty days after the application is made to them by said company, the question of subscribing for and on behalf of such city or town the amount of stock proposed; and if a majority of those voting shall vote in favor of making such subscription, it shall be the duty of such city council or board of trustees *515 to enter the vote on its records; and the mayor of such city, or president of the board of trustees of such town, shall make the subscription in accordance with the vote.”
Section 7 provides for the payment of subscriptions made pursuant to the section quoted in the bonds of the city or town making it, and section 9 directs that there shall be levied and collected “a tax sufficient to pay the semi-annual interest on the bonds issued, and the cost of collecting such tax and paying the interest.”
Shortly after the enactment of this amendment the city of Louisville subscribed for one million dollars of the capital stock of the company. This litigation grows out of an application to and an agreement by the general council to subscribe for and on behalf of said city for additional stock to the amount of one million dollars. Appellant, as the representative of the estate of Levi Tyler, deceased, seeks to enjoin the city authorities from consummating this contract. The grounds upon which he relies for relief, and which we deem it essential to notice, will be considered in the order in which .they naturally arise.
He insists that the first subscription exhausted the right or power conferred upon the city government of Louisville by the amended charter to subscribe for such stock. There is nothing in the act indicating an intention upon the part of the legislature to limit the amount of stock for which any city or town might subscribe. The council or board of trustees are bound to submit the question as to the amount of stock proposed by the company, and the qualified voters of the town or city may accept or reject the proposition as made. The language used does not restrict the company to one proposition, nor the city or town to one subscription. The right of railroad companies to ask from local communities assistance involving the necessity of taxation will not be enlarged by construction. Privileges of this character are in derogation- *516 of individual rights. They will not be implied, but must be clearly and unmistakably granted; but when this has been done the judiciary can not interfere to defeat the legislative will.
Since the adoption of our present constitution the power of the legislature to authorize such taxation has been repeatedly considered by this court, and uniformly upheld. In this case the General Assembly has in express terms conferred upon the company the right to propose, and upon the city of Louisville the power to subscribe for, an indefinite amount of stock. The appellant seeks to have these expressly delegated rights and powers abridged by construction. To determine that the city can make no further subscription for stock will be in effect to do that which the legislature omitted to do — to fix one million of dollars as the maximum amount of stock for which the city of Louisville can subscribe.
We do not regard it as a matter of very great consequence that the correct definition of the word “ whenever ” shall be ascertained; it is admitted that it is sometimes used to signify “as often as.” We are clearly of the opinion that it was so used in the act under consideration. But if this were a matter of doubt, we would not feel authorized on account of our individual opinions as to the propriety of this character of legislation to allow this doubt to induce us to do by indirection that which it must be admitted we have not the power to do directly.
It is next objected that the railroad company has no right to call upon the city of Louisville to subscribe for stock for the purpose of building a branch road to that city; that the power of the company to build branches at all is a qualified power, and.is not accompanied with the right to call upon counties, cities, or towns for subscriptions for the purpose of building them.
Section 29 of the amended charter reads as follows: “ That the president and directors of said company may, with the *517 assent of the holders of a majority in value of the stock of said company, purchase and hold any other railroad in this or any other state, and may subscribe for stock in or aid in the building of any other road in or out of this state whenever, in their judgment, it may be to the interest of the Elizabeth-town & Paducah Railroad Company to do so. They may sell the said Elizabethtown & Paducah Railroad, or lease the same, and may build branches from, said road, and branches from said branches.”
Appellant construes this section to authorize the company to build branches whenever in the opinion of the president and directors it may be to its interest to do so, and argues that as taxation can riot be constitutionally imposed for any other than public purposes, that the legislature did not intend that the power to tax should accompany a power to be exercised in the interest of the company disconnected from and independent of the public good.
The power of the company to purchase and hold other railroads, and to subscribe for stock in other companies or to aid in building other roads, is made to depend upon the assent of the holders of a majority in value of the stock, and the existence of the opinion upon the part of the president and directors of the company that such purchases or subscriptions will be to the interest of the company; but the right to construct branch roads is granted» without restriction or limitation ; and while it is not probable that a prudent directory would engage in building branches not likely to advance the interests of the company, still the power to do so is not made to depend upon any such contingency. The right to build branch roads is as full and complete as the right to construct the main road itself.
It is further claimed that the city of Louisville can not be called on for a subscription for stock except for the purposes for which towns and cities, into or near to which it is proposed *518 to construct the road, can be called on to subscribe. This xnay be conceded, and yet it will not follow that the subscription asked for can not be legally made.
The sixth section points out the towns and cities from which subscriptions may be solicited; but it does not, nor does any other section, declare that the moneys realized from the subscriptions when made shall be applied to the construction of the main road to the exclusion of branch roads.
The company is authorized and empowered to construct its road from Elizabethtown to Paducah, and to “ build branches from said road and branches from said branches.” In the construction of these branches it may undoubtedly use any of its moneys, whether derived from the earnings of its road, from loans, or from subscriptions to its capital stock. Having the right to use subscriptions for stock in building branch roads, it may conti-act in advance with a city or town to which it applies for a subscription that the money arising thex’efrom shall be used in building a branch road in the construction of which such city or town may have a peculiar local interest. There can be no valid objection to the company’s contracting with the city of Louisville to do that which might have been lawfully done had no such contract been eixtered into. (Shelby County Court v. Cumberland & Ohio Railroad Company, 8 Bush, 209.) The express grant to the company of the right to extend its road to the city of Louisville does not preclude it from connecting with that city by a bx’anch road.
It is not alleged in the pleadings and there is nothing in the record showing that the question of subscription was not submitted to the qualified voters of the city within thirty days after the application was made to the general council. In such a state of case we will not presume that the provision of the company’s charter relating to this subject was disregarded.
The ordinance adopted by the general council, pursuant to which the vote upon the question of subscription was taken, *519 provides that for the purpose of paying the interest on the bonds to be issued and delivered in satisfaction of such subscription “an ad-valorem, tax of ten cents on each, hundred dollars’ worth of the property in the city designated in section 9 of the act approved February 24, 1868, entitled ‘An act to amend the charter of the Elizabethtown & Paducah Railroad Company,’ shall be levied annually, and be collected as provided in section 15 of the act aforesaid, and be faithfully appropriated to the payment of said interest; but should said tax of ten cents yield in any one year more than a sufficiency to pay the interest aforesaid and the cost of collecting said tax, the general council shall have power to reduce said tax accordingly.”
The charter of the city of Louisville enacted in 1870 authorizes the general council to contract debts and liabilities on behalf of the city beyond the amount of the revenues of the current fiscal year, and payable within or beyond such year; provided, among other limitations upon, such authority, “that provision shall be made in such ordinance to levy and collect an annual ^tax upon such estate within said city as may be designated by said council, sufficient to pay the interest on such debt or liability as the same shall become due, and to discharge the principal thereof at maturity; but if the city shall hold stock in any corporation for which any such debt shall have been incurred, and the dividends upon such stock shall be sufficient to pay the interest and secure the principal of such debt, the general council shall have power to set apart such stocks and dividends, and with the consent of the creditors interested therein to repeal or suspend all other provisions made for the payment thereof.”
It is unnecessary to determine whether the ordinance in question conforms to this provision of the city charter, inasmuch as this court is of opinion that the enactment of the charter of 1870 in no wise affected the rights of the railroad *520 company nor the powers and duties of the general council of the city as prescribed by the company’s charter as amended February 24, 1868.
Sections 67, 68 and 69 of the last city charter are almost literal copies of sections 10, 11, and 12 of article 6 of the charter of 1851, which was in force when the amendment to the company’s charter became a law. Said section 11, like section 68 of the city charter of 1870, required that for the payment of debts or liabilities exceeding the revenues for the current fiscal year, provision should be made in the ordinance for levying and collecting an annual tax upon such estate within the city, or for the appropriation of such property and revenue belonging to the city, as might be designated, sufficient to pay the interest on such debt or liability as the same should become due, “and to discharge the principal within thirty years.”
The amendment to the company’s charter prescribed a different rule as to debts created to pay subscriptions for its capital stock; and as to these debts, this amendment necessarily controls, notwithstanding the general provisions of the charters of the cities and towns to which it was authorized to. apply for such subscriptions.
Hence, prior to the enactment of the eity charter of 1870, section 11, article 6, of the charter of 1851, and the amendment to the railroad company’s charter, were both in full force and effect, each controlling within its appropriate sphere.
The city charter of 1870 did not set aside nor repeal said section 11; its verbiage was changed, but in substance it was continued in force. As matter of fact it was made part of the new charter, but in law it did not, nor was it intended by the General Assembly that it should, for one moment cease to constitute part of the organic law of such city.
By the re-enactment in substance of this section the legislature did not manifest an intention to change or modify the charter of the railroad company, but rather to leave its *521 rights and the powers and duties of the city government touching subscriptions for its capital stock just as they existed before the adoption of the city charter of 1870. But even if the provisions of section 11, article 6, of the old charter had been substantially changed, it would by no means follow that the railroad charter would be affected by such change.
In enacting the charter of 1870 the General Assembly was engaged in general legislation as to the city of Louisville. Usually general legislation does not apply to specific acts, and it would certainly be carrying the doctrine of implied repeals further than is warranted by any adjudged case to which we have been referred to hold that the charter of a private corporation has been repealed or modified by a general act relating to an entirely different subject, when the provisions of both acts can be readily reconciled, and when to refuse to harmonize and enforce both would be to determine that the legislature had done that which we have no reason to suppose it intended to do.
The 126th section of the city charter of 1870 does not repeal or modify the provisions of the company’s charter touching the payment of subscriptions for its capital stock. These provisions do not apply specially to the city of Louisville, but generally to all towns and cities to which the company has the right to apply for subscriptions.
The requirements of the charter of the railroad company were substantially followed in the proceedings and steps touching the subscriptions for stock called in question by the petition and amended petitions of appellant, and as that charter controls, notwithstanding the provisions of the city charter of 1870, he is not entitled to the relief sought.
The act approved February 18, 1873, ratifies the action of the company and of the general council of the city, and directs the mayor to do that which under the law he was already bound to do. It is not necessary therefore that we should de *522 termine whether or not this court would have recognized the power of the legislature to pass such an act, had the subscription it purports to ratify been invalid under the laws theretofore in force; nor whether acts directing officers of cities, towns, or other local communities to subscribe in the name and on behalf of the city, town, or community represented by them for stock in enterprises similar to the Elizabethtown & Paducah Railroad, without first submitting the proposition to the people to be affected or to their local representatives, are repugnant to the organic law of the state.
The act under consideration is merely cumulative. Obedience to its mandates will not prejudice the rights of any of the parties in interest.
The judgment of the vice-chancellor dismissing the petition and amended petitions of appellant is affirmed.