JUDGE COFER
delivered the opinion oe the court.
The situation of the appellant’s property with respect to the population and government of the city seems to be about the same that it was in 1870, when it was decided not to be subject to taxation by the city. Improvements made by the city have been extended nearer to her land, and the western outfall sewer has been constructed through the northern part of it, but there is not now on or near to her land any such extent of population as' to require the presence or protection of the municipal government; and while the improvements may, on account of their proximity, incidentally enhance the value of her land, they were not required, nor can we presume that they were made, to benefit her or any population near to her which can in any just sense be called a part of the city. The sewer is the only improvement made by the city that extends to her land, and that was made, as its extent and cost conclusively prove, as a part of the general system of sewerage of the city, and not because it was demanded by the population south of Broadway and west of Eighteenth Street, and whatever benefit property situated there derives from the sewer is incidental merely, and can not have constituted any part of the inducement to its location or construction.
The same may be said of the extension of Broadway west of Eighteenth Street, and the improvement of Eighteenth Street as far south as appellant’s land extends; and while it may *421 have been demanded by the interest of those owning property immediately on the street, it is of no appreciable benefit to her land, and was not needed by her or her tenants. There is no population immediately contiguous to her land dense enough to be called a town. There are hundreds of lots, more eligibly situated than any part of her tract, that have been laid out for several years and presumably in the market, but which remain vacant. Her land is valuable only as agricultural or pasture land, and derives no benefit from the city government or from city improvements, except from the fact that it is so situated that they afford facilities for reaching the city. These advantages make the land more valuable than it would be without them. But that is not enough to authorize it to be subjected to taxation for ordinary city purposes.
If the single fact that land is made more valuable by improvements constructed by a municipal government is all that is required to authorize it to tax the land benefited, the area of city taxation would depend upon the energy with which such improvements were pushed into the country rather than upon the area occupied by a city population.
Something more than benefits is necessary to warrant that character of taxation. There must be both benefits, actual or presumed, and a town or city population on or near the land creating a necessity, or, at least, rendering it not unreasonable that the municipal government should be extended over it. But if, considering the location of the property with respect to actual population, it plainly appears that it is not near enough to such population to require municipal government, and the property has not been laid out into lots, and could not be profitably so used, it ought not to be taxed for city or town purposes. Such taxation is palpably unjust, and would be the taking of private property for public use without those corresponding benefits, actual or presumed, which constitute the sole basis of municipal taxation.
*422 This case is unlike that of Robinson v. City of Louisville (MS. Opinion), Cheaney v. Hooser (9 B. Mon. 330), or Covington v. Southgate (15 B. Mon. 492), upon which the decision in Robinson v. The City was based. In Robinson’s case it appeared that the appellant’s land was skirted on the west by Sixth Street, leading into the heart of the city, and which was then graded and opened for the use of the public; that west of his premises many lots had been laid out and sold, some of which belonged to him; that south of his property for a distance of more than half a mile lots had been laid out, some of which had been sold at as much as $22 per foot front, and that appellant had laid off out of the eastern portion of his land lots fronting on Third Street, and had disposed of some of them for as much as $80 per foot front. The facts in that case showed that whatever might be the uses to which Robinson’s land was applied it was more valuable as city property than for any other use, while the facts in this case show that the appellant’s land can not be sold out in lots at remunerative prices, and is most valuable as agricultural land.
The fact that a portion of the taxes levied by the city is for defraying the expenses of public schools does not render the appellant’s land subject to the tax levied for school purposes.
Whatever authority the city has to levy and collect taxes for school purposes is derived from its charter, which, in our opinion, contains nothing indicating an intention on the part of the legislature to subject to taxation for school purposes property so situated that it can not be constitutionally taxed for strictly municipal purposes.
That the legislature might constitute the city a school district and authorize the general council to levy and collect a tax for school purposes upon all the property within the city limits which is subject to state taxation we entertain no doubt. (City of Henderson v. Lambert, 8 Bush, 607.)
But as far as the tax in contest may have been levied for *423 paying the interest on bonds of the city issued in aid of railroad companies, a different rule may prevail; for such taxes are not levied in all cases, if in any, under authority of the city charter, but under the provisions of the charters of the several railroad companies. (Tyler v. E. & P. R. R. Co., 9 Bush, 510.)
The subscription to the stock of the Elizabethtown & Paducah Railroad Company was made under provisions of the charter of the company passed in 1868.
The ninth section of that act provides “that in ease any county, city, town, or election district shall subscribe to the capital stock of said Elizabethtown & Paducah Railroad Company, under the provisions of this act, and issue bonds for the payment of such subscription, it shall be the duty of the county court of such county, the city council of such city, and the trustees of such town to cause to be levied and collected a tax sufficient to pay the semi-annual interest on the bonds issued, and the cost of collecting such tax, and paying the interest, on all the real estate and personal property in said county, city, or town subject to taxation under the revenue laws of the state, including the amount owned by residents of such county, city, town, or election district, which ought to be given in under the equalization laws.”
This language embraces all the real estate situated within the corporate limits of a city or town making the subscription, and all the personal estate owned by residents of such city or town which is taxable under the revenue laws of the state, and as the purpose of the subscription was not strictly municipal, but was one in which all the residents and owners of property within the city were interested, and from which they may be presumed to derive benefits, there would seem to be no doubt but that the legislature might constitutionally tax them for that purpose, and it was so held in Barret & Co. v. City of Henderson (4 Bush, 255).
In the subsequent case of City of Henderson v. Lambert *424 (8 Bush, 607) it was held that Lambert’s land within the city was not subject to taxation for railroad purposes, but that decision was rested on the ground that the act extending the city limits so as to embrace his land exempted it from city taxation, and was passed at the same session at which the act authorizing .taxation for the payment of the railroad subscription was passed, and that as both acts related to the same subject — i. e., taxation in the city of Henderson — they must be construed as one entire act; and to make a later provision repeal a former there must be an express declaration of that intention or an absolute inconsistency between them. (Peyton v. Mosely, 3 Monroe, 80.)
As already remarked, taxes to meet railroad subscriptions are not levied under the authority of the charter of the city, but under authority given in the charters of the respective railroad companies; and as the legislature may constitutionally lay out a district and subject it to taxation for the purpose of aiding in building a railroad (Judge of Shelby County Court v. Shelby R. R. Co., 5 Bush, 225), we perceive no reason why it may not authorize property within the corporate limits of a city to be taxed for such purpose, although such property may be so situated with reference to the population of the city as not to be taxable for strictly municipal purposes. The intention to tax all the real estate within the limits of the city at the time the subscription was made, and all the personal estate of residents within the limits of the city, subject to taxation under the revenue laws of the state, is clearly expressed in the act authorizing the subscription to the Elizabethtown & Paducah Railroad Company; and that it may be constitutionally taxed for that purpose is, we think, clearly determined in the cases of The County Judge v. Shelby R. R. Co. and Barret & Co. v. City of Henderson, supra; and if the question was an open one we should feel no hesitation in deciding it as it has been decided.
*425 We have not looked into the various acts authorizing the city of Louisville to subscribe for the stock of railroad companies, and do not know their phraseology, and we intimate no opinion as to whether any of them, except that of the Elizabethtown & Paducah Company, authorize taxes levied on account of such subscriptions to be levied on all the real estate within the city limits. Nor do we know whether the appellant’s land was within the city limits when any of the subscriptions were made, or mean to decide whether, if it was not, it is liable to taxation on account of such subscriptions.
But as the appellant complains of the illegality of the tax imposed upon her land, and as we find that the city council may have had power to levy a tax upon it for railroad purposes, we can not decide without further pleadings and preparation that the entire tax of which she complains is unauthorized.
Upon the return of the cause each party should be allowed to make such amendments to the pleadings as will present the question whether the appellant is liable for any part of the taxes sought to be enjoined, and such further proceedings should be had as will enable the court to render a judgment in conformity to the principles herein indicated.
Judgment reversed and cause remanded.