JUDGE COEEB
delivered the opinion oe the court.
This suit was brought by the appellees against the appellant upon apportionment warrants to recover the amount alleged to have been assessed under authority conferred by the charter of the city of Louisville for a part of the cost of grading and paving a portion of Barret Avenue. Judgment was rendered as prayed for, and this appeal is prosecuted to obtain a reversal of so much of that judgment as affects the appellant, or his property.
In consequence of the number and character of the questions presented it will be necessary to enter into a somewhat detailed discussion of the charter of the city and the pleadings in the cause.
The charter provides that the improvement of streets shall *576 be made and done as shall be prescribed by ordinance or contract, approved by the general council, and that the original construction of streets shall be made at the exclusive cost of the owners of lots in each fourth of a square, to be equally apportioned by the general council according to the number of square feet owned by them respectively, except that corner lots (say thirty feet front and extending back as may be prescribed by ordinance), shall pay twenty-five per cent more than others for said improvements; and it also provides that each subdivision of territory bounded on all sides by principal streets shall be deemed a square, and that when the territory contiguous to any public way is not so defined into squares the ordinance providing for the improvement of such way shall state the depth on both sides fronting said improvement to be assessed for the cost of making the same according to the number of square feet owned by the parties respectively within the depth as set out in the ordinance. (Secs. 2 and 3, act of 20th February, 1873, Lucas’s Charter, p. 73-4.) Sec. 4 of the same act also provides that when an improvement is completed the city engineer shall give notice by advertisement in a daily paper of the time and place for the inspection and reception of the work, and that the owners of adjacent property may appear and be heard before the engineer as to whether such improvements have been made in accordance with the ordinance authorizing the same or the contract therefor. Section 2 of the same act gives a lien upon property assessed, and authorizes its enforcement by suit against the owner.
From an analysis of these provisions it appears that in order to create the lien contemplated it must appear (1) that a public way in the city has been improved by original construction; (2) that it has been improved as prescribed by ordinance, or by contract approved by the general council; (3) that the property sought to be charged with the lien is situated within a fourth of a square contiguous to the improvement if the ter *577 ritory lias been defined into a square bounded on all sides by principal streets, or if not so defined that the ordinance providing for the improvement states the depth on both sides to be assessed for the cost, unless the contiguous territory on one side has been defined into squares, in which case it is only necessary that the ordinance should prescribe the depth to which the assessment should extend on that side not laid out into squares; (4) that the improvement has been inspected and received; and (5) that the cost has been apportioned among the respective owners of property within the limits subject to assessment according to the number of square feet owned by them respectively.
That the petition contained all these necessary allegations was not questioned at the argument, but it was insisted that it was necessary not only to allege facts which showed that all the steps required by the charter to be taken in order to create a valid lien on the property assessed had been in fact taken, but that it was also necessary, in order to authorize a judgment, that complete and legally authenticated copies of the record of the general council showing that the necessary steps had been taken should be filed with the petition, and that the copies referred to in the petition were not properly authenticated, and therefore the judgment is erroneous.
The Code of Practice provides that if the action, counterclaim, or set-off, is founded on a note, bond, bill, or other writing, as evidence of indebtedness, it must be filed as a part of the pleading, if in the power of the party to produce i.t. (Section 145.) But it has never to our knowledge been held that the omission to file such writings would be ground for reversal.
The facts constituting the cause of action must be stated in the pleading, even where the indebtedness of liability is evidenced by a writing, and the writing is only evidence of the facts stated. If a writing, which is the evidence of the *578 indebtedness or liability constituting the cause of action, be not filed, the adverse party may ask a rule to file it, and upon failure to file it, or to offer a sufficient reason for not doing so, may have the action dismissed. But if he fails to take steps to require it to be filed, and judgment is rendered on the pleading, it can not be reversed because the written evidence of the debt or liability was not filed. The records of the proceedings of the general council and of the officers of the city government are only evidence showing a compliance with the law, and the consequent right of the contractor to be paid for his work.
It is contended, however, that section five of the charter of 1851 is still in force, and that under its provisions it is necessary to file complete and legally authenticated copies of the record of the proceedings of the general council before a judgment can be properly rendered.
We decided in Craycraft v. Selvage (10 Bush, 696) that so much of that section as required all persons liable on the same contract and who had not paid their assessment to be made parties to any suit on the contract against any one of such parties was repealed by the new charter, and we incline to the opinion that the portion of said section which required copies of the proceedings of the council to be filed with the petition has been repealed also. But whether it has been repealed or not, it does not make the filing of such copies necessary to a complete cause of action.
The language is that liens for improvements "may be enforced by filing a. bill in chancery, with a copy of the ordinance directing the work to be done, and of the contract for doing the same; and of the report of the completion of the work, ánd of the apportionment of the cost of the same, made as required, which shall be prima facie evidence, in favor of the contractor, or any one claimant under him.” The evident object was to declare what should be prima facie evidence of *579 the facts constituting the contractor’s right to a recovery, and as no evidence is required until there is an issue of fact, a judgment rendered without filing the copies referred to would not, on that account alone, be erroneous. Such copies, like other writings evidencing the indebtedness or liability sued for, are evidence merely, and constitute no element in the cause of action, and need not be introduced into the record unless an issue of fact is made which requires that some one or all of the facts of which such copies are evidence shall be proved, or, unless when made an exhibit by the pleading, the adverse party, by proper proceedings in court, requires them to be filed.
The next inquiry, then, is whether any, and if so, what issues of fact were made by the answer.
It was denied that there was, or ever had been, such an ordinance as that set forth in the petition as passed Aug. 19, 1875, for the improvement of a part of Barret Avenue. The allegation of .the petition to which this was intended to be an answer was that the general council of the city of Louisville did, on the 19th day of August, 1875, pass an ordinance, etc.
It will be observed that the answer contained no denial that the general council passed such an ordinance, but the denial was that there was or ever had been such an ordinance, which may mean, and probably was intended to mean, no more than that in the opinion of the pleader the ordinance, although in fact passed by the council, was invalid, because the council had no power to pass it. The allegation was distinctly made that the general council passed the ordinance, to which the answer is, not that the ordinance was not passed as alleged, but that there was no such ordinance, which may be true, and yet it may also be true that it was passed according to all the formalities required by the charter and the usages of legislative bodies. The allegation that an ordinance was passed was not the mere *580 pleading of a conclusion, but of a fact, just as an allegation that a party executed a deed, a note, or other writing, or is the holder and owner of a bill of exchange, or the like, without alleging the facts which show that he did execute the writing, or which make him the owner and holder of the bill.
The next attempted denial was of the right, power, or authority of the council to pass such an ordinance, or to assess any part of the cost upon appellant’s land, which, Unless the facts alleged in the petition, or some of them, were denied, amounted to no more than an expression of the pleader’s opinion upon a question of law.
It was denied that the appellant had any knowledge or information sufficient to form a belief whether Redd & Bro. duly contracted with the city to do the work at the lowest and best bid offered. The allegation, in the petition that they had contracted at the lowest and best bid was immaterial, and whether it was well denied or not it is not necessary to decide.
When such a contract is entered into it should be with the lowest and best bidder; but when a contractor alleges that the mayor entered into a contract with him to do that character of work, that such contract was not given to the lowest and best bidder, if available at all without allegation of fraud, is matter of defense; and the same may be said of a failure to advertise as required.
It was also denied that the appellant had knowledge or ' information sufficient to form a belief -whether the work had been completed in accordance with the ordinance; but it was ■ proved by evidence other than the alleged copies of records of the general council that it had been, and that evidence was not excepted to. Besides the allegation that the work had been inspected and received not being denied, as we will presently see, its acceptance by the proper authority was conclusive unless expressly impeached for fraud.
*581 It was denied, in the same way that the city, for the property owners owning ground within the limits, stated in the petition, had the work inspected and received, and had undertaken that Redd & Bro. should be paid, and have a lien until paid, on the property described. These denials are in nearly the exact language of the petition, but the facts are grouped together and denied as a whole. Some of the facts alleged— as, for instance, that the city had undertaken that Redd & Bro. should be paid, and should have a lien until paid — were immaterial, the city having no power so to undertake, and the law, not the city, giving the lien. It may then be true that the work was inspected and received, and yet all in the answer upon this point may be true also. But, even aside from this, the answer in this regard is fatally defective. The Code requires that the answer should contain a denial of each fact controverted by the defendant. The object was to appeal to the conscience of the party, and to compel him to admit every material fact which, taken by itself, he could not deny. Two facts were alleged; viz., (1) that the work had been inspected, and (2) that it had been received. The appellant was therefore bound, in order to present a good answer, to deny each fact separately, in order that it might appear that he had no knowledge or information sufficient to form a belief as to either; and if he could not so answer, he was bound to admit the fact or facts as to which he had such information.
It was also denied that after the work was done an apportionment of the cost was made by the proper authorities against the owners of the lots within the limits declared in the ordinance ; and it was further denied that said apportionment was made, passed, and approved according to law, the city charter, and ordinances; and that the owners of property within said limits were, by resolutions duly approved, ordered to pay said Redd & Bro. the apportionments made.
These denials were in the language of the petition, and *582 seem to us to have been sufficient, unless it was the duty of the appellant to state in what respect the alleged apportionment and resolutions were insufficient.
Section 149 of the Civil Code provides that in pleading the performance of a condition precedent in a contract it shall not be necessary to state the facts showing such performance; but it may be stated generally that the party' duly performed all the conditions on his part; and if such an allegation is not controverted, as provided in the preceding section in regard to judgments, it shall not be necessary to prove it on the trial.
The preceding section does not prescribe the manner in which allegations in regard to judgments shall be controverted, but simply declares that if such allegations are not controverted they need not be proved on the trial.
How then shall allegations of the performance of conditions precedent be controverted? If by a general denial in the language of the petition, the plaintiff may be. put upon the proof of the performance of every precedent condition, when only a single one could be separately denied.
One of the leading objects of the Code was to bring the parties to an issue as to the particular facts which could be distinctly affirmed on one side and denied on the other, and in order to accomplish that result it was provided that the plaintiff should state the facts constituting his cause of action in ordinary and concise language, and that the answer should contain a denial of each material allegation in the petition controverted by the defendant, and that the pleadings should be sworn to. But it was also intended to abridge and simplify pleadings; and to accomplish that object it was provided that the pleader, instead of stating in detail the facts showing performance of conditions precedent, might allege in general terms that he had duly performed all the conditions on his part. The plaintiff being expressly authorized to plead in that manner, the defendant must, if he relies upon the fact *583 that any of the conditions precedent have not been performed, specify the particulars in which the plaintiff has failed (Newman’s Pl. & Pr. 510 — 11; Henderson & Nashville R. R. Co. v. Leavell, 16 B. Mon. 362), thus confining the issue to be tried to such particular condition or conditions precedent as the defendant may indicate as unperformed.
It results from this conclusion that the answer was insufficient to put the plaintiffs below upon the proof that the cost of the work had been apportioned by the proper authorities against the owners of property within the limits mentioned; that such apportionment was made and approved according to law; or that the owners of property had been, by resolution duly approved, ordered to pay the apportionments as made.
It seems to us, after a careful consideration of the answer, that it contained no denial of any of the facts alleged which, if put in issue, could only have been proved by the record of the proceedings of the general council; and we need not decide whether the alleged copies filed with the petition were legally authenticated or were in due form or not.
It was alleged in the petition, and was not denied in the answer, that the territory contiguous to that part of the street improved had not been defined into squares; and it appears from the petition and answer that the property on the west side of the street was assessed to the depth of 147J feet, while that on the east side was assessed to the depth of 252 feet.
No reason is stated in the petition or in the alleged copy of the ordinance under which the work was done for this inequality in the assessment; but the evidence shows that Brent Street lies west of and parallel to Barret Avenue, and has been dedicated and established as far south as the improvement made on the latter street, and that the distance from Barret Avenue to Brent Street is 295 feet, and it also shows that there is no street east of Barret Avenue within the distance of the largest square.
*584 Brent Street having been dedicated and established, it was entirely proper that an assessment to improve Barret Avenue should extend only half the distance from one street to the other, leaving the other half to be assessed to improve Brent Street. But why extend the assessment on the east side to a depth of 252 feet, thus requiring the appellant to pay $2.52 for every $1.47-J paid by owners of property on the west side? When land has been defined into squares the rule is that the assessment shall extend from each street improved to the center of the square; and the assessment being made upon the basis of the number of square feet owned by each person, when all the streets surrounding a square have been improved, each lot will have been subjected to its proper proportion of the cost, and that equality will be preserved even when the squares on opposite sides of the street are of unequal depth. But when the ground has not been defined into squares on either side of the street to be improved, or has been so defined on one side and not on the other, equality in the burden can only be reached by extending the assessment to an equal depth on each side. The assessment in this case was no doubt made on the assumption that Edward Street, which has been established for some distance on the east of Barret Avenue, would be extended on the same line through appellant’s land opposite to the improvement in question, and that there would be no street established between the two. If that shall turn out to be the case, then perhaps there would ultimately be no injustice to the appellant. But it may turn out that Edward Street will not be extended at the distance of 504 feet from Barret Avenue, or, if it is, that an intermediate street will be established and a part of the ground now subjected to assessment will be again assessed to improve a street between Barret Avenue and where Edward Street would run if extended, as seems to have been assumed would be the case.
Assessments should be made in accordance with the facts *585 existing at the time, and can not be properly based upon speculation as to what will occur in the future.
That there shall be equality, as far as is reasonably practicable in the distribution of public burdens, whether local or general, is a cardinal principle in the law of taxation, and flagrant departures from that rule ought not to be allowed, unless a more equal distribution is, under the circumstances, unattainable.
The gross inequality in this case appears on the face of the petition; and as such inequality is violative of a settled rule that such burdens must be approximately equal if such equality can reasonably be attained, the inquiry arises whether there is any thing in this record presenting for decision the question whether there is inequality, and if so, whether this court has power to correct it.
As the inequality appears on the face of the petition, and the judgment was based upon an assessment thus shown to have been unequal, the judgment is erroneous and must be reversed, unless the right to object to the inequality has been waived, or the decision of the general council as to the depth to which the assessment should extend is conclusive on the courts.
When it appears from the petition that the plaintiff is not entitled to as much as he recovered judgment for, the error is not waived by failing to object by answer or otherwise; and this court will reverse for such error, unless it is a mere error of the clerk, which is clearly not the case here. And we think it is equally clear that the declaration by the general council of the depth to which the assessment shall extend can not bind the courts to enforce an assessment flagrantly unequal.
The language of the charter already quoted would seem to contemplate that the assessment in a case like this should extend an equal depth on each side of the street. The legislature can not have intended to confer upon the city government *586 arbitrary power to distribute such burdens according to its mere will, in disregard of the rule requiring approximate equality; and if such was its intention, we feel no hesitation in saying that no such power could be constitutionally conferred. Absolute arbitrary power over the property of the citizen, our Bill of Rights declares, exists nowhere in a free government.
It seems to us that the true rule is to extend the assessment, in cases like this, an equal distance on each side of the street, and that the general council has no power to do otherwise, except in those cases where there are parallel streets -on each side already dedicated, and not beyond what might reasonably be regarded as the distance of a square from the street to be improved, and then the assessment should extend each way one half the distance to such parallel streets.
The counsel for the appellant go farther, and argue that the legislature had no constitutional power to authorize the general council to designate the depth to which the assessment should extend, because, as they contend, that is an attempt to delegate the power to establish a tax district and to determine what and how much shall be taxed.
The legislature has made all the land within the city liable to assessment for the cost of the original construction of adjacent or contiguous public ways, and has merely delegated to the city government the power to distribute the burden according to a rule which, if not fixed by the terms of the act itself, is fixed by the rule which always governs courts in assessment cases, that the burden must be approximately equal or the assessment will be declared illegal. (Sutton v. Louisville, 5 Dana, p. 31; Lexington v. McQuillan, 9 Dana, pp. 516-17.)
The whole landed property within the city is subject to assessment for the improvement of streets. When that assessment shall be made is a question not only constitutionally but *587 properly left to the discretion of the local authorities, as is also the question whether the assessment to pay for improving a particular street shall extend to a greater or less distance from the stteet to be improved, subject only to the fundamental condition that the assessment must be uniform, or as nearly so as is reasonably practicable under the circumstances of each particular case.
We do not concur with counsel in their estimate of the consequences to flow from the doctrine just indicated. The city council may not limit the assessment to a belt twenty feet wide along the street, and thereby confiscate the whole front and cut the proprietor off from the highway, to build which his property is taken. Such a proceeding would be palpably unreasonable and oppressive, and the courts would not hesitate so to adjudge, and in doing so would be but following a long line of respectable precedents.
But it is suggested that the council may extend the limits so as to make property remote from the highway subject to burdens not justly its own.
All municipal assessments are based on the ground that the property subjected to assessment is benefited by the improvement for which the assessment is made, and neither the legislature of the state nor of the municipality can constitutionally subject property not actually or presumptively benefited by an improvement to assessment to pay the cost of such improvement. It is often difficult, and sometimes impossible, to determine the exact limit to which such benefits extend, but from the very nature of the subject there must be authority somewhere to decide that question; and there is perhaps no safer mode of dealing with a question environed by such difficulties than to confide the power to the local government, to be exercised subject to supervision by the courts, where the peculiar facts of each case can be examined and the controversy determined by those rules and principles which have *588 always governed courts in dealing with questions of assessment and taxation.
Nor do we concur with counsel that the power delegated to the council to designate the depth to which an- assessment shall extend, because legislative, is therefore beyond the control of the courts. No one will question the power of the legislature of the state to declare what shall be taxed and the rate of taxation; yet no one will at this day deny that the courts have the power to examine statutes imposing exactions upon citizens under the name of taxation, and decide whether such exactions are in fact taxes or mere spoliations under the guise of taxation. This doctrine has been held by this court in an unbroken line of cases, commencing as early as Sutton v. Louisville (5 Dana, 28), decided in 1837, down to the case of Courtney v. Louisville (12 Bush, 419), decided at the last term.
If, then, the courts can and do examine into exactions levied upon the citizen or upon his property by the legislature, and declare such exactions illegal and void, a fortiori they may make similar inquiries and decisions when assessments are made by a municipal government.
Injustice and oppression are quite as likely to result from the arbitrary designation of tax-districts by the legislature of the state as from the making of such districts by municipal governments, and the difficulty of obtaining relief in the former case is necessarily much greater than in the latter.
We conclude, therefore, that the general council had power to subject the appellant’s land to assessment to an extent that did not violate the rule of equality so often and so emphatically announced by this and other courts.
But as the assessment as made was grossly unequal, a case is presented for a correction of the assessment, so far as the appellant is concerned, under that clause of the charter which provides that “ no error in the proceedings of the general council *589 shall exempt from payment after the work has been done as required by either the contract or ordinance; but the general council, or the courts in -which suits may be pending, shall make all corrections, rules, and orders to do justice to all the parties concerned.”
The assessment, according to the terms of the ordinance as set forth in the petition, was required to extend on the west side of the street to the depth of 147J feet; and, as we have already decided the council had no lawful authority to extend the assessment to any greater depth on the east side, it results, therefore, that there should have been apportioned against the appellant’s property a proportion of the whole cost of the improvement equal to the proportion which the number of square feet owned by him within the depth of 147-J feet bears to the whole number of square feet within the distance of 147-J feet on each side.
There is nothing in this case inconsistent -with the decision in Dulaney v. Bowman (MS. Opinion), in which we held that errors in the assessment should be pointed out in the answer, and their correction asked in the court below.
In this case the error in the assessment appeared in the petition, but in that case it did not appear in either the petition or answer.
The appellant also complains that the assessment is excessive, that it reaches to half the value of his property fronting on the improvement, and has diminished instead of increasing its value. The street has been graded down in places from six to ten feet below the surface of the adjoining land; and it may become necessary to grade the land to a level or nearly to a level -with the street, which will probably cost one half the present value of the property.
Measures resulting in imposing such burdens upon a citizen seem to be harsh, and may, as contended, have been wholly unnecessary; but it is not shown, or even suggested, that the *590 grade adopted for the street was axi improper one; and, if it •had been, it is too late after the work has been done in accordance with the ordinance and coxitract- to raise that question.
It is not difficult to imagine cases in which the courts would, if applied to in time, be strongly inclined to protect the owners of property against the making, at their expense, of improvements not demanded by the convenience of the general public whén the cost of such improvement would consume an unusual proportion of the value of the property required to bear the burden. But in such cases, if the courts have any power over the subject, that power must be invoked before the improvement is made, and can not be resorted to to avoid paying for work already done in conformity with the ordinance and contract.
We see no difficulty in applying that provision of the charter which authorizes the courts to correct an error in the assessment to a case like this. We do not hold the ordinance to be void because it directs an assessment on oxxe side to the depth of 252 feet, w'hile it only directs the assessment on the other side to extend to the depth of 147|- feet, but simply that it is void so far as it extends the assessmexxt on the appellant’s side of the street beyond the depth to which it is extended on the opposite side.
This court has repeatedly held acts incorporating a city or town, and authorizing all the px-operty within the corporate limits to be taxed by the corporation, to be unconstitutional so far as they attempted to impose city or town taxation upon property not sufficiently near to population to derive appreciable benefits from the municipal government; yet it has never been held, because it was attempted to tax those not benefited, that the act was void as to those who were benefited. We apply the same rule here, and say that the city council had power to assess the appellant’s land to the same depth to which they assessed the land on the opposite side of the street. That *591 far the ordinance was valid. Beyond that it was invalid, because to extend the assessment further produces inequality in the burden.
In thus deciding we do not assume to correct the legislative action of the general council, but simply determine what, on the facts of this particular case, was the extent of its power to impose a burden on the appellant’s property.
In respect to the appellant’s plea of nul tiel record, interposed to raise the question whether the alleged copies of the record of the proceedings of the general council were admissible as a record, we need only remark that we are of the opinion that a formal plea of nul tiel record can not be made available under our system of pleading, which, at the time the plea in this case was filed, recognized the following pleadings, and no others; viz., petition, answer, cross-petition, reply, and demurrer.
For the reasons herein indicated the judgment is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.