JUDGE GOFER
delivered the opinion oe the court.
These appeals are prosecuted to reverse judgments rendered in two suits brought by the appellee to recover the contract price for grading and paving a part of Seventh Street in the city of Louisville, and involve some of the questions decided in the case of Preston v. Roberts, &c.* Of those questions no notice will be taken here.
The ordinance which is the foundation of the proceeding in one of these cases provided for the improvement of Seventh *598 Street from the center of Ormsby Avenue to the north side ,of the ground owned by the Louisville & Nashville Railroad Company, and that which was the foundation of the proceedings in the other provided for the improvement of the same street from the south line of the ground owned by the railroad company to the southern boundary line of the city. The cases were heard together.
The petitions each contained an elaborate and detailed statement of the facts relied upon to show that every step required in order to entitle the contractor to recover was duly taken, and their sufficiency has not been questioned. There was filed with each petition what was alleged to be complete copies of the proceedings of each branch of the general council, of the ordinances, reports of the inspection of the work, and apportionments of the costs among the several owners of property within the limits prescribed by the ordinances and resolutions approving the apportionments and ordering apportionment warrants to be issued.
The greater part of the facts alleged were attempted to be denied by denying knowledge or information sufficient to form a belief, and others by denying mere conclusions of law.
This court has repeatedly held that when a material fact alleged in a pleading is presumably within the knowledge of the adverse party, or is evidenced by official documents, and such documents or authenticated copies thereof are filed with the pleading, an answer by such party that he has no knowledge or information sufficient to form a belief as to such facts is insufficient. (Wing v. Dugan, 8 Bush, 583; Meddis v. Obst, MS. Opinion; Gridler, &c. v. Farmers & Drover’s Bank, 12 Bush, 333.)
And it was held in Meddis v. Obst that as the proceedings of the general council were required to be made matters of record, citizens and tax-payers were bound to take notice of the contents of such records; and that while it was true that *599 in cases like these it was incumbent upon those asserting claims against tax-payers to show that the requirements of the law had been substantially complied with, yet it was not necessary to allege or prove that each branch of the city legislature kept a journal, unless that fact was questioned by the tax-payer.
Following the principle there announced, we must presume that these appellants did know whether the alleged ordinances had been passed and approved, and whether the other alleged proceedings of the general council of the city of Louisville were had as stated in the petition, even though, as is contended by the appellants’ counsel, the alleged copies were not legally authenticated, and were on that account not sufficient to enable the pleader to form a belief whether such proceedings as were alleged were had or not.
So far then as the adult appellants are concerned, their answers must be held insufficient so far as they attempt to deny facts which ought to appear on the records of the general council by mere averments of want of knowledge or information sufficient to form a belief.
The answers all contained a denial that the work had been completed in accordance with the ordinance and contract, and had been inspected and received, and an averment that the ground on which the improvement was constructed was not a street and did not belong to the city; but all these facts were well established by the evidence; and we are of the opinion that the judgments must be affirmed as to all the appellants except Barret, trustee, Payne, &c., Welch, &c., John Sonne’s guardian, and Jos. Sonne’s guardian. Those appeals are all from judgments against infants having a beneficial interest in the land assessed and adjudged to be sold.
The infants, by their guardians ad litem, adopted the answers of the adult defendants, and as to them those answers were sufficient; indeed, if there had been no answer for them no judgment could have been rendered affecting their interests *600 without proof of the facts constituting the cause of action, and it will not be presumed as against them that the steps were taken which were necessary to charge them or their property. It is therefore necessary to decide whether the alleged copies of the records of the proceedings of the general council were so authenticated as to be evidence of the facts stated therein.
A material allegation is one essential to the claim'or defense, and which could not be stricken from the pleading without leaving it insufficient. (Sec. 154, Civil Code.)
The allegation in the petition that the writings filed were true copies of the record of the proceedings of the general council was not essential to the cause of action, and might have been stricken out without leaving the petition insufficient. The allegation was therefore not a material one, and could not be taken as true because it was not denied, and if it could have been it was denied in the only manner in which the infants were bound to answer it; that is, by an averment that they had no knowledge or information sufficient to form a belief.
It does not appear that exception was taken or objection made to the reading of the copies as evidence, and the question therefore arises whether, if there were valid objections, they have been waived by the failure to make the question in the court below.
When a paper which purports to be an official copy of a public record, which, if properly certified, would be legal evidence, is filed with a pleading as an exhibit, and it does not appear to have .been objected to in the court below, we are of-the opinion that any objection for want of formality in the authentication is waived, and can not be made for the first time in this court, and that this rule applies to all persons, whether sui juris or not.
But when there is no attempt at authentication, or the attempted authentication is by a person not authorized to make *601 it, the supposed copy is not evidence for any purpose, and, although admitted, proves nothing, and must be disregarded wherever called in question by persons not sui juris at the trial. As to all others, their silence may be taken to be a tacit admission that the alleged copy is in fact a copy. But the silence of infants proves nothing, and a paper bearing no evidence whatever of authenticity can not be made evidence against them under any circumstances.
A copy of a deed or will certified by a justice of the peace, a copy of a record of a circuit court certified by a county judge, or a copy from the executive journal certified by the librarian would not be evidence for any purpose; but if the copy of the deed or will be certified by the clerk of the county court of the county where it is recorded, the record of the circuit court by the clerk of that court, or the copy from the executive journal by the secretary of state, it matters not how informal the certificate, the copy may be received in evidence unless objected to. When there has been an attempt by the proper officer to certify a copy, the question whether the certificate is sufficient is one for the decision of the court trying the cause, and the admission of the copy as evidence is to be treated as a decision by the court that the certificate is sufficient, and if there is no exception the error, if any, is waived.
When there is no attempt at certification, or a certificate has been made by an officer having no lawful authority to make it, if a copy is offered and read without objection, the failure to object may be taken, as against persons competent to make it, as an admission that the writing is a true copy.
But when there is no semblance of a certificate, or a certificate has been made by an officer having no authority to make it, the supposed copy is in and of itself no evidence whatever, and can not be made evidence against an infant, even by his express consent, because he is legally incapable of giving consent.
*602 So far, then, as the infant appellants are concerned, we must look into the alleged copies, and see whether there has been an attempt to certify them by any one authorized to make such certification.
The copies are not regularly made out or certified. Those filed in the court below have been brought up on subpoena duces tecum,-and are before us. A statement of the manner in which one of the copies is made out and certified will suffice for all.
, It commences with a meeting of the board of common councilmen, held June 23, 1875, at which it appears that all the members were present except one. It also appears that a message was received from his honor, the mayor, stating that the purchase of the Seventh-street road had been consummated, and transmitting an ordinance for improving a part of Seventh Street from the south side of the ground owned by the L. & N. R. R. Co. to the southern limits of the city.
Then follows the proceedings of a meeting of the same board on July 15th, at which all the members were present except three:
“ Mr. Newhall, from the street committee, western district, submitted the following ordinances, which were read a second time, and passed by the following vote: Yeas — President Kaye, and Messrs. Ainslie, Bourlier, Bickel, Crowe, Eeely, Fuller, Hall, Hamilton, Letterlie, Long, Masonj McAteer, Newhall, O’Conner, Ramsey, Robinson, Smith, Callahan, and Wiest— 20; nays, none:
“An ordinance for improving a part of Seventh Street from the south side of the ground owned by the Louisville, Nashville & Great Southern Railway Company to the southern limits of the city.”
This is followed by the proceedings of a meeting of the board of aldermen held July 22, 1875, at which “Mr. Byrne submitted the following ordinances from the board of common councilmen, which were read once and ordered to be read a *603 second time, and, the second reading being dispensed with by a vote of two thirds of all the members elect, the same were passed by the following vote: Yeas — President Spalding, and Messrs. Story, Rubel, Hughes, Bremer, Murrell, Moss, Gilbert, Rankin, Roberts, and Byrne — 11; nays, none:
“An ordinance for improving a part of Seventh Street from the south side of the ground owned by the Louisville, Nashville & Great Southern Railway Company to the southern limits of the city.”
Then follows what purports to be an ordinance for improving that part of Seventh Street mentioned in the proceedings of the board of common councilmen of June 23 and of the board of aldermen of July 22, but there is no statement that it is the ordinance referred to in those proceedings as having been passed, nor is there any thing in the" ordinance to show when it was passed by either board, but it appears to have been approved July 26, 1875, by Charles D. Jacob, mayor. There is no certificate or attestation to the copy of the ordinance, nor is there any evidence that it was approved by the mayor except the fact that his name appears on the copy, unless the attestation at the conclusion of the exhibit, of which we will speak presently, furnishes such evidence.
The copy of the ordinance is followed by the proceedings of the board of common councilmen at a meeting held September 2, 1875, at which a contract for the improvement of that part of Seventh Street before referred to was approved; and that is followed by the proceedings of a meeting of the board of aldermen, held on the same day, at which the same contract was approved by that board; and following that is what purports to be the original, but is evidently only a copy of the contract for making the improvement. Then follow copies of the record of the separate proceedings of the two boards and a resolution adopted by both approving the apportionment of the cost of the improvement among the several *604 owners of property within the limits prescribed in the ordinance, and that is followed by the engineer’s report of the apportionment, to which his name is appended, and immediately following his name is the following:
“A copy. Attest: L. R. McCleery, G. B. G.
Oliver Lucas, G. B. A.”
This is the only authentication to be found in or on the exhibit.
It is insisted by the counsel for the appellants (1) that this court can not know who these persons are, or whether they hold any official position, or have a right to certify copies of the records of the general council; (2) that conceding we must take judicial notice of the fact that L. R. McCleery was clerk of the board of common councilmen and that Oliver Lucas was clerk of the board of aldermen, they had no authority to certify copies of the proceedings of their respective boards; (3) that if they had such authority they had no authority to certify the ordinance, the contract, or the joint resolution making or approving the apportionment; and (4) that if they had authority to certify all these copies, they have not done so.
1. The charter provides that each board of the general council shall elect a clerk. When a clerk is elected he becomes an officer of the city government, and we think we are bound to take judicial notice of the name and official signature of the incumbent just as we are bound to take notice of the name and official signature of any other jiublic officer. The corporation is an agency of the state for all the ordinary purposes of city government; and in the exercise of its ordinary functions of preserving public order, the public health, and promoting the comfort and convenience of the public by establishing, improving, and maintaining public highways and the like, it is simply discharging duties which in their nature and character devolve upon the government of the state as much *605 as do similar duties outside of the city; and in these respects the government of the city is just as much an instrumentality of the state as are county courts.
The courts are bound to take judicial notice of the names and official signatures of all the sheriffs, jailers, constables, clerks, and other officers charged with public duties, without any other evidence than is afforded by the signature, accompanied by the usual indicia of official station. They will presume, until the fact is directly called in question, that one who signs his name and follows it by words or letters indicating a particular official character is such officer. Without that assumption the functions of government could not be performed. For the same reasons we must assume that a person who signs his name as incumbent of an office of a city or town which is provided for by its charter is the lawful incumbent of that office, and is charged with the duties and possesses the powers usually attached to an office of that character.
The letters “ C. B. C.” following the name of L. R. McCleery are the initial letters of the words “Clerk Board Council men,” and the letters “C. B. A.” following the name of Oliver Lucas are the initials of “ Clerk Board Aldermen j” and as we find them attempting to perform duties naturally pertaining to those offices, we must assume, nothing to the contrary appearing, that they are the legal incumbents of the offices indicated by the letters following their respective names.
2. The charter of the city provides that all records, official proceedings, and papers of the mayor and general council and other officers under the charter shall be deemed public records, and shall be entitled to full faith and credit as such, and that “official copies thereof may be read in all courts with like effect as (copies) of other public records.” But the charter does not declare what officer shall make and certify copies of such records. The General Statutes, however, provide that “ a copy from the mayor’s office of any city, or from the official *606 books of any town or religious society, of an ordinance or by-law for the rule of such city, town, or society, attested by the keeper thereof, shall be evidence for any purpose for which the original could be received.” (Sec. 6, chap. 37, General Statutes.)
Neither the charter nor any other statute declares who shall be deemed the keeper of the records and official papers of the city of Louisville, and we must either decide that because of this omission there can be no legal certification of copies of such records, or we must determine from analogy and common usage who is to be deemed such keeper.
The general council must convene as often as once in two weeks, and may adjourn from day to day and sit as long as business may require, and we think it safe to assume that the journal which each board is required to keep, after being made up by its clerk, is kept under his control, and that copies from these journals may be used in evidence when attested as such by the clerk of the respective boards.
3. But we do not think that either or both can legally attest a copy of an ordinance, joint resolution, or other document the result of the joint action of the boards, or requiring the approval of the mayor. There is no statute making either, or both, the keeper of such records, and as the mayor is the chief executive of the city, we think he must be deemed the keeper of its by-laws and ordinances, and of all documents which are the result of the joint action of the two branches of the city legislature, or which require his approval before becoming complete.
It is his duty to see that the by-laws and ordinances are enforced; he is required to take final action on every by-law, ordinance, and joint resolution, and as the law has provided no custodian to whom he may deliver them, he must of necessity retain them, and is therefore the keeper, and must attest copies of them to be used in evidence; and besides this, it seems to *607 us clear that neither clerk has any authority whatever to attest .a copy of an official act of the mayor, and although they can legally attest copies of ordinances, etc., passed or approved by their respective boards so as to furnish legal evidence that such ordinances, etc., were passed, they can not attest a copy of the mayor’s approval.
Contracts made by the mayor must, when approved by the general council, be returned to him to be performed, and apportionments, when approved by both branches of the general council, must be sent to him for approval, and when approved remain in his custody, because no one has been indicated to take charge of them after his approval.
We are therefore of the opinion that the copies of the ordinances, contracts, joint resolutions, and of apportionments could not be legally attested by either or both of the clerks, and that the copies filed were not evidence, and did not authorize judgments against the infant appellants.
4. The statute does not require a formal certificate, but a simple attestation. The courts are bound to know who are the legal custodians of public records in this state, and it is therefore not necessary that the officer should certify that he is the keeper. In certifying copies of the records of religious societies a different rule may obtain, for the courts do not know who are the keepers of their records.
In making out copies of the record of the proceedings of the general council of Louisville, the proceeding of each board should be copied separately and attested by its clerk, and those attested by the mayor should be copied in the same manner^ and attested by him.
All the judgments appealed from in these cases are affirmed, except those against Barret, trustee, Payne and wife and their children, Welch and wife and their children, and Jos. Sonne and Jno. Sonne, which are reversed, and the cases are remanded as to them for further proper proceedings.

 Preston v. Roberts, &c., is the next case preceding this in this volume, p. 570.