### J. G. BARRETT, TRUSTEE *v.* C. GODSHAW.

### J. B. PAYNE, TRUSTEE *v.* C. GODSHAW.

[Abstract Kentucky Law Reporter, Vol. 5—864.]

#### Assessment of Real Estate for Public Improvements.

 In order to subject real estate to taxation for municipal purposes where it has been included by an extension of the municipal boundary, there must be both benefits actual or presumed to the property from the city government, and a city population so near

it as to render it not unreasonable to extend the local power over it. When it has not been laid out into lots and can not be profitably used·in that manner so as to make it more profitable than if left undivided, it ought not to be subjected to taxation for city purposes.

APPEALS FROM LOUISVILLE CHANCERY COURT.

April 5, 1884.

OPINION BY JUDGE PRYOR:

This is the third time the present controversy has been in this court. See *Barret v. Godshaw,* 12 Bush (Ky.) 592, and *Barrett v. Godshaw,* 10 Ky. Opin. 324. It was reversed on the first appeal as to the infants and affirmed as to the adults, and on the return of the case from this court the judgment rendered against the infants was again reversed for the reason that the records of the city and proceedings of the city council were not properly authenticated, and therefore there was nothing on the face of the papers showing that the improvement of the street in question had been directed or required to be made in accordance with the charter of the city. On the return of the case the infants or those representing them filed an amended answer setting up a new defense altogether to the recovery, and a judgment was again rendered for them. The defense attempted to bring this case within the ruling of the court in the case of *Courtney v. Louisville,* 12 Bush (Ky.) 419. The doctrine of that case is that in order to subject real estate to taxation for municipal purposes, where it has been included by an extension of the municipal boundary, there must be both benefits actual or presumed to the property, from the city government and a city population so near it as to render it not unreasonable to extend the local power over it. When it has not been laid out into lots and can not be profitably used in that manner so as to make it more profitable than if left undivided it ought not to be subjected to taxation for city purposes. In other words, if the extension or boundary includes the territory for even purposes of taxation, and not because of actual or presumed benefits to the property, the burden can not be imposed.

The facts of each case must control the application of the rule laid down by this court in the case of *Courtney v. City of Louisville.*

The advantages which the owners derive from the location of the land within the designated boundary; its proximity to the places of business; the benefit to be derived from its institutions such as schools, charities, etc., must all be considered in determining such a question. If the location and character of property is such as to show that the property of the citizen will be taken for public use without compensation if the tax is imposed then the chancellor will relieve him from its payment.

In *Sharp's Exr. v. Dunavan,* 17 B. Mon. (Ky.) 223, thirty-four acres of land belonging to Sharp, and upon which his family alone resided, was included by extending the boundary of the town of Hopkinsville, and this court held the property liable for taxation. In *Stites v. Dunnevan* the boundaries of the same town were extended and twenty-two acres of land used as a residence alone embraced within the extension were held liable to municipal taxation. While these cases or the facts pertaining to them conflict with the views expressed by this court in *Courtney v. Louisville,* still the rule with reference to the right of the municipal government to tax property within its limits is the same in each case. The court, in deciding the case of *Courtney v. Louisville,* would doubtless have said that the land on the facts proved in the cases of *Sharp's Exr. v. Dunavan* and *Stites v. Dunnevan* was not liable for taxation. The street improved in this case is but a continuation of Seventh street, and the property sought to be taxed is directly on that street and in a short distance of Floral Park, Central Avenue Park and a principal street known as Magnolia avenue. Some of the land is used as pasture land, a part for dairy purposes, part for gardens, a part for ordinary agricultural purposes, and some in commons. Its location on the map of the city before us shows its proximity to the city proper, and the improvements of the street upon which the property is located would certainly conduce to increase its value. This at least would be the reasonable presumption. It may not have had that effect, but if the facts must in all cases be established that actual benefits have been derived in the way of increasing the value of the property, it would be difficult in almost every case to extend the boundary of a city so as to subject the property included to its share of the burden imposed by the city for the ordinary purposes of revenue. In order to impose the tax, if the question of value is to control, the city would in almost

every case be required to show such a population as would bring the property into market by the foot instead of by the acre, or transfer the business of the city within the extended boundary. Some eight or ten small tenements have already been erected on this land, and its contiguity to the city gives its dairymen, its gardeners and the owners such advantages as would justify the imposition of the burden.

The mere addition of territory to the city within its boundary may not increase the value of the property, and still the benefits derived by the property from its near location to the city would authorize the taxation complained of, as in this case. This property was divided into lots and streets shortly after the improvement was ordered and a plat of the territory filed in the county clerk's office. While this could not be regarded as a dedication for the infants, by the commissioners, of the streets and alleys it shows that they regarded the property by reason of its nearness to the city as more valuable for city lots than anything else, and in fact they state in their report that the property was laid off into building lots for city purposes "for which its chief value depends." It is really city property used for agricultural purposes, and the fact that property within a city is used for such purposes will not relieve it from its share of the burden.

Again, this is the third appeal in the present case, and with those representing the interest of the infants and familiar with the location of the property and the improvement, this defense seems never to have been made until the judgment had been twice reversed, a fact rather persuasive that the exercise of the taking power by the city was proper and that the presumed benefits at least justified the expenditure for the improvements made. Whether the street is in a worse condition now than the old turnpike was when it was taken up is not a question this court is called upon to decide, nor is the wisdom of the city council in making the improvement to be passed on by this court. If they had the right to cause the improvement to be made at the expense of the property holders and the improvement was made and received by the city, those taxed must pay for it. The publication in the city papers as required by the charter is alleged in the amended pleadings, and sustained by the proof.

The judgment below must be *affirmed* in each case.

36

*Barrett & Brown, R. W. Woolley, for appellants.*

*Young & Trabue, Goodloe & Roberts, Alex. P. Humphrey, for appellee.*