## Stevens v. Commonwealth.

(Decided Jan. 29, 1935.)

N. B. HUNT for appellant.

BAILEY P. WOOTTON, Attorney General, and **DAVID C.** WALLS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

An indictment in two counts was returned against the appellant, Gus Stevens, by the grand jury of Henderson county. The first count charged him with the crime of knowingly receiving stolen property, and in the second count it was charged that he had theretofore been convicted of a felony, to wit, grand larceny. On his trial he was convicted and sentenced to a term of four years in the penitentiary.

The home of George E. Stigger in Henderson was broken into on the night of December 12, 1933, and numerous articles of wearing apparel, bed clothing, and jewelry were stolen. A few days later the home of Julia Bailey, a colored woman, was searched, and a number of the stolen articles were found in her possession. She stated then, and testified at the trial, that Gus Stevens brought the articles to her home and requested her to keep them for him. On the same day the home of Gus Stevens was searched during his absence, but when his wife was present, and a considerable portion of the stolen property was found in the house. The appellant's sixteen year old son, Darrel Stevens, who had escaped from the reform school at Greendale a few days before the commission of the crime, admitted that he and James Lewis, who also had escaped from the reform school, broke into the Stigger home, stole the property, and carried it to his father's home.

When the Stevens home was searched, Mr. and Mrs. George E. Stigger, their son, George E. Stigger, Jr., R. C. Soaper, sheriff of Henderson county, J. T. Reed, deputy sheriff, and probably others were present.

George E. Stigger was the first witness introduced by the commonwealth. He described the articles stolen from his home, and testified as to what occurred when the Stevens home was searched, and identified the articles found when the search was made. His son was the next witness, and he corroborated his father. No objection was made to the testimony of either. The commonwealth then introduced as a witness J. T. Reed, the deputy sheriff who assisted the sheriff in making the search. He was asked by the attorney for the appellant if he had a search warrant, and he answered in the affirmative, and stated that the sheriff in his presence read it to Mrs. Stevens. Over the appellant's objection, he then read the search warrant with the sheriff's return thereon to the jury. The warrant had been issued by B. S. Morris, county judge of Henderson county, and the return had been made by R. C. Soaper, sheriff. It is insisted that the trial court erred in permitting the search warrant to be introduced in evidence without authentication thereof by the judicial officer who issued it and who was the legal custodian thereof, and this is the sole ground urged for a reversal of the judgment.

Counsel for appellant concedes that he has been unable to find a case, domestic or foreign, directly in point in support of his contention that the county judge who issued the search warrant and to whose office it was returned was the only person who could produce it in evidence and prove its authenticity. The case of Hickman v. Griffin, 6 Mo. 37, 34 Am. Dec. 124, is cited. That was a suit for malicious prosecution. The plaintiff, Griffin, charged in his petition that Hickman appeared before one Glazebrook, and charged him with petty larceny, and procured the justice to issue a warrant, and that he (Griffin) was arrested by virtue of such warrant. On the trial, the plaintiff offered in evidence the warrant without proving the handwriting of the officer who issued it, which the defendant objected to, but the court permitted the writing to go to the jury. The justice of the peace who issued the warrant was later introduced, and he testified that Hickman appeared before him, and that he issued the warrant which had been introduced in evidence upon Hickman's application. As stated in the opinion, whatever might have been defective in the testimony of the plaintiff when first introduced, such defect, if any, was cured by the

testimony of the officer who issued the warrant, but the court in the course of the opinion said:

"If the papers of the justice had been duly certified by him, and it appeared from the record, that they were on file in the circuit court, there could be no question of their admissibility, without further proof. But the papers offered were original papers, and there is nothing preserved in the bill of exceptions to show how they got into the circuit court. The papers were not admissible without some proof of their authenticity."

It does not appear whether Missouri at the time that opinion was rendered had a statute similar to section 1625 of the Kentucky Statutes, which provides that all courts shall take notice of the official signature of any officer of this state. This section was not intended to apply solely to state officers, but it evidently was intended to apply to all public officers in the state, and it was in effect so held in Marsee v. Middlesborough Town & Lands Co., 65 S. W. 118, 23 Ky. Law Rep. 1258. See, also, Jackson v. Rose, 223 Ky. 285, 3 S. W. (2d) 641; Riley v. Wallace, 188 Ky. 471, 122 S. W. 1085, 11 A. L. R. 337; Holtman v. Holtman (Ky.) 114 S. W. 1198. But, aside from the statute, we think the warrant imported its verity on its face and was admissible in the manner it was introduced. The fact that B. S. Morris who issued it was the county judge of Henderson county might be reached without evidence of the fact by an application of the principle of judicial notice, and his signature on the document evidences it as genuinely executed by him. In Wigmore on Evidence, vol. 3, sec. 2131, the author, in discussing various modes of authenticating documents, says:

"A document purporting to be official and bearing a signature or seal or other mark purporting to be that of the purporting official may be regarded as sufficiently evidenced."

In Barret v. Godshaw, 12 Bush, 592, it was said:

"The courts are bound to take judicial notice of the names and official signatures of all the sheriffs, jailers, constables, clerks, and other officers charged with public duties, without any other evidence than is afforded by the signature, accompanied by the usual indicia of official station. They will pre-

sume, until the fact is directly called in question, that one who signs his name and follows it by words or letters indicating a particular official character is such officer.''

Here the original official document was offered in evidence, and it was proper to accept it as sufficiently authenticated until its authenticity was put in question by proof.

The judgment is affirmed.